FILED
JAMES J. VILT, JR. - CLERK
OCT 16 2023
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RICKY BERNARD JONES                                     PLAINTIFF


Vs.                                    CASE NO. 4:23-CV-70-JHM


CORRECT-CARE SOULUTIONS,                                DEFENDANT


MOTION TO AMEND
JUDGMENT PURSUANT
TO FRCP RULE 59


Comes now Plaintiff, Ricky Bernard Jones, pro se, and without

the assistance of counsel, pursuant to Fed.R.Civ.P. Rule 59 and

hereby moves this Honorable Court to alter and amend its September

25, 2023, order dismissing all his Eighth Amendment claims against

Defendants Buchanan, Crews, Hart, Jordan, and Klack/Klatt related

to plaintiff's excessive force incident. As further grounds for

this Motion Jones states:

This Court, in its September 25, 2023, Order dismissing Jones's

Eighth Amendment claims against Defendants Buchanan, Crews, Hart,

and Jordan held in pertinent part:

> Because § 1983 does not provide a statute of limitations,
> federal courts borrow the forum state's statute of limitations
> for personal injury actions. Wilson V. Garcia, 471 U.S. 261,
> 275-80 (1985). In Kentucky, § 1983 actions are limited by the
> one-year statute of limitations found in Ky. Rev. Stat. §
> 413.140(1)(a). Collard V. Ky. Bd. of Nursing, 896 F.2d 179,
> 182 (6th Cir. 1990). Although the statute of limitations turns
> on state law, the question of when a § 1983 claim accrues to
> trigger the statute is a matter of federal law. Wallace V.
> Kato, 549 U.S. 384, 388 (2007). The statute of limitations

1

starts to run on either "when the plaintiff has a complete and present cause of action" (the "standard" rule) or "when the plaintiff discovered (or should have discovered) the cause of action" (the "discovery" rule). Dibrell V. City of Knoxville, 984 F.3d 1156, 1162 (6th Cir. 2021)(quoting Rotkiske V. Klemm, 140 S.Ct. 360 (2010)).[2] In Dibrell, the Sixth Circuit declined to decide which rule to apply to the plaintiff's excessive-force claims because the claims "would be untimely either way." Id. at 1162.

The Court finds that the same is true of Plaintiff's Eighth Amendment excessive-force claims. Plaintiff alleges that Defendant Buchanan used OC spray on him and caused him to suffer a shoulder injury on May 8, 2020. Plaintiff obviously knew these actions occurred on that date and therefore, he had complete cause of action on that date. Plaintiff then had until May 8, 2021, at least, to bring this claim against Defendant Buchanan. See Hodge V. City of Elria, 126 F. App'x 222, 224 (6th Cir. 2005) (holding that "when asserting a claim under § 1983 for the use of excessive force, the 'injury' occurs on the date of the constitutional injury, the date the allegedly excessive force is used"). Plaintiff did not bring this action until May 2023, approximately two year after the statute of limitations expired for these claims. Thus, Plaintiff's excessive-force claim against Defendant Buchanan must be dismissed.

As to Plaintiff's claims against Defendants Crews, Hart, and Jordan regarding Defendant Buchanan's alleged use of excessive force, these claims fail because they necessarily had to occur on or before the May 8, 2020, date of the excessive-force incident to have been the cause of the incident. Moreover, Plaintiff does not assert that these claims accrued at a later date. See, e.g., Adeniji V. New York City Police Dep't, 21-CV-0664 (LLS), 2023 U.S. Dist. LEXIS 22168, at *13-14 (S.D.N.Y. Feb. 7, 2023)(dismissing claims based upon a municipality's policies, customs, procedures, and failure to trian as time-barred because they had to be "necessarily contemporaneous" with the underlying and time-barred excessive-froce and false-arrest claims and the plaintiff did not plead that these claims accrued at a later date); Courson V. Reno V. Cnty. Bd of Comm'rs, No. 21-3270-SAC2021 U.S. Dist.LEXIS 229593, at *6 (D. Kan. Dec. 1, 2021)(dismissing failure-to-train claim based upon underlying excessive-force claim as time-barred since excessive-force claim was time-barred); Curran V. City of Dearborn, 957 F. Supp. 2d 877, 887 (E.D. Mich. July 31, 2013)(dismissing claims for supervisory liability as time barred "to the same extent" the underlying constitutional tort is time-barred).

---

[2] Though the statute of limitations is an affirmative defense, a court may raise the issue sua sponte if the defense is obvious from the face of the complaint. Fields v. Campbell, 39 F. App'x 221, 223 (6th Cir. 2002)(citing Haskell v. Washington Twp., 864 F.2d 1266, 1273 (6th Cir. 1988)).

> Thus, the Court concludes that Plaintiff's claims against Defendants Buchanan, Crews, Hart, and Jordan related to the alleged excessive-force incident are barred by the applicable statute of limitations and must be dismissed for failure to state a claim upon which relief may be granted. See, e.g., Cataldo V. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012) (citing Jones V. Bock, 549 U.S. at 215)("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").
>
> b. Delibertae Indifference to a Serious Medical Need
>
> i. Defendant "Klack/Klatt"
> Plaintiff alleges that he reported his injuries to Defendant "Klack/Klatt" on May 8, 2020, the date of the excessive force incident, but that Defendant "Klack/Klatt" took no action. Because Plaintiff was aware of this claim on the date it occurred, it is likewise barred by the statute of limitations and must be dismissed for failure to state a claim upon which relief may be granted.

See pp. 6-8 of DN 11, MEMORANDUM OPINION AND ORDER.

Jones states that this Court's focus is misguided and that a fundamental miscarraige of justice is occurring where the Courts are to act as a place of last resort and refuge to protecting the civil rights of prisoners, whom are wards of the State because even this Court is fully aware that at the time of May 8, 2020, all across the planet every earthling was affected by COVID-19 in one fashion or another. The pandemic affected and changed the world, taking many lives with it, young and old alike. It even affected this Court's docket tremendously.

Jones was at Kentucky State Penitentiary, (KSP), at Eddyville, Kentucky, which went on lockdown shortly thereafter that date of May 8, 2020, for well over a full year, if not longer. Adjacently, the prison also went on another maximum lockdown for another 4 to 6 months, if not longer for a mass-State-wide transfer because of

3

Kentucky's overcrowded and dilapidated State-wide prison facility conditions at various prisons, (KSP, GRCC, KSR, just to name a few). There was no yard movement, none, whatsoever! Jones, who worked as a legal aide at that time while at KSP experienced serious constitutional deprivations caused on a daily basis. There was NO KIND OF LEGAL LIBRARY ACCESS whatsoever, it appeared the world was truly ending indeed as he witnessed people losing their civil and criminal cases, forced to eat bologna daily or peanut butter & jelly, no recreation and if things could not get any worse rashes of staff assaults, inmate upon inmate assaults & staff shortages became commonplace up until he was taken out for his surgery.

Everything came to a complete standstill and if this Court itself summons the prison logs to visually see for itself, it would agree that it was impossible for Jones to meet the statutory requirement from May 8, 2020, until when he mailed out his complaint May 16, 2023, for a complete and present cause of action did not accrue where Jones did not discover his shoulder was nearly broken until approximately May 22, 2022, when he requested the results of the MRI Catscan conducted by Dr. W. Lawrence Long on 12/28/21 read to him. Without a functioning grievance or legal department to try meeting a one (1) year limitation requirement doing so becomes a mere facily although KSP was still taking other inmates out for swalling officer keys, fragments of lightbulbs, fragments of aluminum soda cans, etcetera. He wasn't one of the fortunate ones to be transported out for medical care although he knew something was wrong with his shoulder seriously because he couldn't dress, undress, sleep or conduct regular daily activities.

4

In hindsight, it's easy for the Court to assume that something could have very well be done, but without 42 U.S.C. § 1983 forms, address, obtaining documentation of names of officers involved, the gathering of evidence needed all during a pandemic is easily said than done. Jones did not have the keys to the law library. He could not call out to anyone. Lockdown meant just that, lockdown. Jones was unaware if he was suffering from a sprained shoulder muscle, or just joint pain that would eventually pass, however, that was not the case.

Jones's case is clearly indistinguishable from Hodge V. City of Elyria, 126 Fed. Appx. 222 (6th Cir. 2005), which the Court relies upon and points to although in that case Hodge suffered fractured ribs and a torn rotator cuff. He tested positive for cocaine and had been allegedly stopped while driving his car in Elria, Ohio, August 12, 2000, by officer who claimed he ran a stop sign and could not answer officer because he had something in his mouth that appeared to be cocaine. He was requested to spit it out, he tried swallowing it, he claimed he was choked, forced to the ground and kneed until he coughed up blood. He later filed a 42 U.S.C. § 1983 alleging that the search conducted by police was unconsitutional and that the force used in stopping and arresting him was excessive. His suit was filed on August 27, 2002.

Hodge claimed that his permanent injury was not revealed to him until November 2000. The Sixth Circuit disagreed, holding that when asserting a claim under § 1983 for the use of excessive force, the injury occurs on the date of the constitutional injury, the date the allegedly excessive force is used although Hodge conceded that

5

his claims were governed by Ohio's two-year statute of limitations.

Jones's case was being diligently pursued, even throughout the pandemic, the state-wide transfer, the staff shortage, as well as the staff assaults & inmate upon inmate assaults which were all beyond his control and kept the prison facility locked down until his transfer out for surgery, therefore, equitable tolling applies. The Court must amend and alter the judgment because the verdict is against the weight of evidence, Byrd V. Blue Ridge Rural Elec. Cooperative, Inc., 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953 (1958); Mitchell V. Boelcke, 440 F.3d 300, 303 (6th Cir. 2006); Latino V. Kaizer, 58 F.3d 310, 314 (7th Cir. 1995)(ruling that jury's verdict should be accorded greater deference under Rule 59 in cases involving simple issues with highly disputed facts, than in cases involving complex issues with facts that are not disputed), for here, a miscarriage of justice must be prevented. The verdict is excessive where the extent of Jones's physical injuries were not known to him until he was made aware from the MRI Catscan reading by Dr. Long on 12/28/21, that was not read to him until May 22, 2022, and surgery was not had until 12/07/22, and he was still on lockdown status until then.

Hodge did not experience nothing like COVID-19 in 2000, nor did he experience anything like a maximum lockdown because of a state-wide transfer, multiple staff shortage, staff & inmate assaults keeping the prison facility on complete lockdown status, no recreation, watching cock roaches and rats racing and running in and out of the cells, being fed sack lunches through the bars of a cell three (3) times daily and showers three (3) times a week, no phone and hardly

6

and rarely any outside communication through the U.S. Mail. This Court must find that the amount of the verdict is so unreasonable that it shocks the conscience, Mitchell V. Boelcke, 440 F.3d 300, 303 (6th Cir. 2006); Gasperini V. Center for Humanities, Inc., 518 U.S. 415 (1996).

Newly discovered evidence is another reason why this Court should declare a new trial because (1) it existed as of the time of trial; (2) must have been excusably overlooked, notwithstanding Jones's due diligence in attempting to discover it; (3) it is admissible; and (4) it is likely to alter the trial's outcome. Colon-Millin V. Sears Roebuck De Puerto Rico, Inc., 455 F.3d 30, 36 n.4 (1st Cir. 2006); Peacock V. Board of Sch. Comm'rs, 721 F.2d 210 (7th Cir. 1983). Also, the improper conduct by the Court. See Aggarwal V. Ponce Sch. of Med., 837 F.2d 17 (1st Cir. 1988)(moving party so seriously prejudiced by court as to be deprived of a fair trial).

The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally mandated deadline such as KRS 413.140(1)(a) unavoidably arose from clear circumstances beyond that of Jones's control, Robertson V. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)(quoting Graham-Humphreys V. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000), and equitable tolling should be applied sparingly and only when exceptional circumstances prevented timely filing through no fault of Jones. Gibson V. Am. Bankers Ins. Co., 289 F.3d 943, 947-48 (6th Cir. 2002); See also, Irwin V. Dept. of Veteran Affairs, 498 U.S. 89, 96 (1990). Jones has beared the burden by showing this Court his lack of complete and present cause of action and his actual knowledge of when he discovered his actual injury (when it was made

7

known to him through medical officials), coupled with the extra-ordinary circecumstances which occurred that surpasses any lack of actual notice of the filing requirement, his lack of constructive knowledge of any filing requirement, his diligence in pursuing his rights, absence of prejudice to defendants as well as any reasonableness in remaining ignorant to the legal requirement of his filing claims. Allen V. Yukins, 366 F.3d 396, 401 (6th Cir. 2004); Cook V. Comm'r of Soc. Sec., 480 F.3d 432, 437 (6th Cir. 2007)(quoting Dunlap V. U.S., 250 F.3d 1001, 1008 (6th Cir. 2001), for causal link between the extraordinary circumstances and untimely filing is shown by circumstances which actually caused him to miss deadline. Hall V. Warden, Lebabnon Corr. Inst., 662 F.3d 745, 750-51 (6th Cir. 2011); Ata V. Scutt, 662 F.3d 736, 742 (6th Cir. 2011).

This Court's analogy of Dibrell V. City of Knoxville, 984 F.3d 1156 (6th Cir. 2021), in comparison to Jones's case at bar is imperceptible to say the least, in many respects where in Dibrell the Court stated in oertenent part:

... The parties part ways only over the date on which Dibrell's claim "accrued" and started the one-year clock. Although the statute of limitations turns on state law, the question of when a § 1983 claim accrues to trigger the statute turns on federal law. Wallace, 549 U.S. at 388, 127 S.Ct. 1091. The "standard" accrual "rule" for federal claims starts the limitations period "when the plaintiff has a complete and present cause of action" that can be raised in court. Rotkiske V. Klemm, ___ U.S. ___, 140 S.Ct. 355, 360, 205 L.Ed.2d 291 (2019)(quoting Graham Cnty. Soil & Water Conservation Dist. V. United States ex rel. Wilson, 545 U.S. 409, 418, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005).). The Supreme Court has contrasted this "standard" rule with a "discovery" rule that ties the start of the limitations period to when the plaintiff discovered (or should have discovered) the cause of action. Id. at 360-61. Any presumtpion favoring that discovery rule, the Court recently clarified, represents a "bad wine of recent vintage." Id. at 360 (quoting TRW Inc. V. Andrews, 534 U.S. 19, 37, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). (Scalia, J., concurring in the judgment)).

8

In this § 1983 context, the Court has started its accrual analysis with the standard rule that a claim accrues when the plaintiff has a complete cause of action. McDonough, 139 S.Ct. at 2155; Wallace, 549 U.S. at 388, 127 S.Ct. 1091. Our § 1983 caselaw, by contrast, has started the accrual analysis with the competing discovery rule that the claim accrues when the plaintiff knows of, or should have known of, that cause of action. See King V. Harwood, 852 F.3d 568, 578 (6th Cir. 2017); Johnson, 777 F.3d at 843. Do our cases imbibing this "bad wine" warrant recosideration in light of Supreme Court's recent teachings? We need not reslove this tension now because Dibrell's knowledge that he had been arrested (allegedly wrongfully) would start the clock on the same date. Either approach thus would have triggered the staute of limitations on February 17, 2014.

But the Court has not ended with the standard rule in this § 1983 context. Rather, it has proceeded to look to the accrual rules for the tort most like the constitutional claim at issue. McDonough, 139 S.Ct. at 2156. In Wallace, moreover, the Court made clear that the torts of false arrest and false imprisonment have special accrual rules. 549 U.S. at 388, 127 S.Ct. 1091. These torts, which again challenge a detention without legal process, accrue at the earlier of two dates. Id. at 389-90, 127 S.Ct. 1091. They accrue when the false imprisonment ends with the plaintiff's release. See id. at 389, 127 S.Ct. 1091 (citing 2 H.G. Wood, A treatiese on the Limitation of Actions at Law and in Equity § 187(d)(4), at 878 (rev. 4th ed. 1916); 2 Authur Underhill, Priciples of the Law of Torts 202 (1881). Or, if the plaintiff remains detained, they alternatively accrue when the false imprisonment ends with the issuance of legal process-when, for example, the plaintiff is brought before a magistrate. Id. at 389-90, 127 S.Ct. 1091. "From that point on," a plaintiff relying on the law of torts to challenge any continuing detention must assert a malicious-prosecution claim. Id. at 390, 127 S.Ct. 1091.

Dibrell's claim is untimely under these rules. His detention ended on February 18, 2014, when he was released on bond, so the limitations period likely started then. Underhill, supra, at 202; see Fox V. DeSoto, 489 F.3d 227, 233-35 (6th Cir. 2007).

Unlike Dibrell & Hodge, who were out in public selling drugs for a living, again, Jones' claims were totally different than the "either way" theory the Court believes. If the Court is remotely interested in finding out the truth of the matter the Court can easily subpoena from the Warden the daily prison log since it is too sensitive of information for Jones to have for

proving his claim before this Court that immediately thereafter May 8, 2020, that KSP went on extended COVID-19 lockdown for well over a year, not once, but at least twice or more, that KSP also simultaneously went on extended lockdown because of mass transfers state-wide, staff shortages began occurring creating problems for KYDOC employees to run the facility and staff as well as inmate on inmate assaults began occurring.

Jones did not realize he had to put all of this inside of his initial 42 U.S.C. § 1983 Complaint to show due diligence, all he had been through since the excessive force incident until the time he knew he had a actual cause of action in which his accrual time would have begin to start. Dibrell never faced COVID-19, a world-wide pandemic which like Jones's case offset everything from timely occuirring legal-wise. Moreover, when KSP was on lockdown and Jones was still attempting to be seen by specialist, otherthan those at KSP who could assist with determining what was wrong with his shoulder because Jones is far from a medical expert.

The Captain's day log book or the KSP Warden's book can certainly detail to this Court under Fed. R. Civ. P. Rule 45 can inform this Court as to exactly how many days the prison was on lockdown from May 8, 2020 to 12/07/2022.

In Dibrell, an unknown person flagged down Knoxville Officer Whitehead on 2/17/14, claiming that Dibrell was selling drugs out of his Chrystler at a Wallgreens. Pills were found by other officers who arrived on the scene. The state court denied his motion to suppress, however, the appellate court vacated his convictions,

finding that the officers seized Dibrell before the dog sniff and that the anaymous tip did not give them reasonable suspicion to do so. He then filed 42 U.S.C. § 1983 in which the Sixth Circuit affirmed stating although Dibrell was detained (seized) without probable cause or reasonable suspicion to believe that he committed a crime, his initial seizure challenge was untimely on malicious prosecution that state probable cause to initiate the criminal case.

### Conclusion

This Court is requested to alter and amend its Memorandum Order pretaining to the dismissal of all of Jones's Eighth Amendment claims against Defendants Buchanan, Crews, Hart, Jordan and Klack/Klatt, subpoena the KSP log and see for itself how many days the prison was on lockdown from May 8, 2020, to December 7, 2022, if so, if the prison was locked down because of COVID-19, mass-transfers, staff and inmate upon inmate assaults which constitutes extra-ordinary circumstances preventing Jones from timely filing his claims should proceed because of equiatble tolling.

Respectfully Submitted,

Ricky Bernard Jones #105345
Green River Correctional Complex
1200 River Road, P.O. Box 9300
Central City, KY 42330

Plaintiff, pro se

11

Certificate of Service

This is to certify that a true and correct copy of this legal document h as been mailed postage prepaid this 12th day of October, 2023, to:

United States District Court
United States District Clerk's Office
Federal  Building
423 Frederica Street, Room 206
Owensboro, KY 42301-3013

Commonwealth of Kentucky
Justice And Public Safety Cabinet
125 Homles Street, 2d Floor
Frankfort, KY 40601--2108

Respectfully Submitted,

Ricky Jones